**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**WANDA J. AUSTIN,**
o/b/o **R.M.B.,**

                              **Plaintiff,**                    **6:12-cv-465**
                                                                **(GLS)**

              **v.**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                              **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinsky Law Group                          KAREN S. SOUTHWICK,
300 S. State Street                        ESQ.
5th Floor, Suite 520
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN                   TOMASINA DIGRIGOLI
United States Attorney                      Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER
### I.  Introduction

Plaintiff Wanda J. Austin o/b/o R.M.B., challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g).  (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering the arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

### II.  Background

On April 8, 2008, Austin protectively filed an application for SSI under the Social Security Act on behalf of her daughter, a minor, alleging disability since March 1, 2007.  (*See* Tr.[1] at 46, 85-88.)  After the application was denied, Austin requested a hearing before an Administrative Law Judge (ALJ), which was held on March 26, 2010.  (*See id.* at 19-45, 47-52, 60-61.)  On June 8, 2010, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final decision upon the Social Security Administration Appeals Council's denial of review.  (*See id.* at 1-4, 5-18.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript.  (*See* Dkt. No. 14.)

Austin commenced the present action by filing a complaint on March 15, 2012, seeking review of the Commissioner's determination.  (*See* Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (*See* Dkt. Nos. 12, 14.)  Each party, seeking judgment on the pleadings, filed a brief.  (*See* Dkt. Nos. 16, 18.)

### III.  Contentions

Austin avers that the Commissioner's decision is not supported by substantial evidence and was arrived at through the application of incorrect legal standards.  (*See* Dkt. No. 16 at 10-20.)  Specifically, Austin contends that the ALJ erred in: (1) developing the record; (2) assessing the credibility of Austin and R.M.B.; and (3) deciding that R.M.B.'s impairments did not functionally equal a listed impairment.  (*See id.*)  The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is supported by substantial evidence.  (*See* Dkt. No. 18 at 8-17.)

### IV.  Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations.  (*See id.* at 2-6; Dkt. No. 16 at 2-8.)

### V. Standard of Review

The standard for reviewing the Commissioner's final decision under

42 U.S.C. § 405(g)[2] is well established and will not be repeated here.  For

a full discussion of the standard of review, the court refers the parties to its

previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No.

1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

Similarly, for a full discussion of the three-step analysis used by the Social

Security Administration to determine whether individuals under the age of

eighteen are disabled, the court refers the parties to its previous opinion in

*Shatraw ex rel. K.C.Y., III, v. Astrue*, No. 7:11-cv-13, 2012 WL 589667, at

*1 (N.D.N.Y. Feb. 22, 2012).

## VI.  Discussion

## A.    Developing the Record

Austin first contends that the ALJ erred by failing to properly develop

the record.  (*See* Dkt. No. 16 at 10-12.)  According to Austin, the ALJ erred

in failing to recontact R.M.B.'s treating physician Dr. Michael Kore and

treating psychiatrist Dr. Surendra Johri to obtain functional evaluations.

(*See id.*)  The Commissioner argues, that, as the record was sufficiently

developed to enable the ALJ to make a decision, the ALJ did not err in

---

[2] 42 U.S.C. § 1383(c)(3) renders section 405(g) of Title 42 applicable to judicial review of SSI claims.

failing to develop the record further.  (*See* Dkt. No. 18 at 8-9.)  The court agrees with the Commissioner.

While the ALJ has an affirmative obligation to develop the administrative record, his duty to do so is not without limit.  *See Guile v. Barnhart*, No. 5:07-cv-259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010); *see also* 20 C.F.R. § 416.912(d) (stating that generally, a complete record contains a "medical history for at least the [twelve] months preceding the month in which" the claimant files her application).  Indeed, if all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make his determination based upon that evidence.  *See* 20 C.F.R. § 416.920b(a).  Consistent with that notion, where there are no "obvious gaps" in the record, the ALJ is not required to seek additional information.  *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).  The ALJ must, however, "make reasonable efforts to obtain the claimant's treating physician report."  *Streeter v.  Comm'r of Soc. Sec.*, No. 5:07-CV-858, 2011 WL 1576959, at *3 (N.D.N.Y. Apr. 26, 2011) (internal quotation marks and citations omitted).  "[T]he lack of a medical source statement will not make the record incomplete" though, so long as the

ALJ's decision is "based on sufficient and consistent evidence."  *Id.*
(internal quotation marks and citations omitted); *see* 20 C.F.R.
§ 416.913(b)(6); *Pellam v. Astrue*, No. 12-412, 2013 WL 309998, at *2 n.2
(2d Cir. Jan. 28, 2013).

Here, the record contains treatment notes from both Drs. Kore and
Johri.  (*See* Tr. at 129-57.)  Moreover, the record contains medical source
statements with respect to R.M.B.'s physical and mental functional abilities
from consultative examiners as well as the opinions of non-examining
psychological and pediatrics experts.  (*See id.* at 158-62, 199-205, 212-
23.)  Austin correctly points out that the ALJ has a "heightened duty" to
develop the record when a claimant proceeds *pro se*.  *Echevarria v. Sec'y
of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982); (*see* Dkt. No.
16 at 12).  However, the ALJ fulfilled that duty by conducting an extensive
hearing, (*see id.* at 19-45), during which he permitted Austin to discuss any
issues that she felt were important, (*see id.* at 42), questioned Austin as to
whether there was any additional evidence to collect, (*see id.* at 26-27),
and, thereafter, obtained the opinion of an impartial medical expert, (*see id.*
at 127-28, 217-29).

Ultimately, as the ALJ had before him substantial evidence that

6

enabled him to render a decision with respect to R.M.B.'s limitations, the court is satisfied that further development of the record was unnecessary. *See Pellam*, 2013 WL 309998, at *2.

**B**.   <u>**Credibility Assessment**</u>

Next, Austin argues that the ALJ's credibility assessment is unsupported by substantial evidence.  (*See* Dkt. No. 16 at 12-14.) Specifically, Austin claims that the ALJ failed to consider the factors required by 20 C.F.R. § 416.929(c) and failed to determine whether R.M.B.'s medically determinable impairments could reasonably be expected to produce her symptoms.  (*See id.* at 13.)  The court disagrees.

In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. § 416.929(a); *see* SSR 96-7p, 61 Fed. Reg. 34,483, 34,484 (July 2, 1996). Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms.  *See* 20 C.F.R. § 416.929(c)*;* SSR 96-7p, 61 Fed. Reg. at 34,485.  Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective

7

medical evidence alone," an ALJ will consider the factors listed in 20 C.F.R. § 416.929(c)(3)(i)-(vii)[3] in making his credibility determination.  SSR 96-7p, 61 Fed. Reg. at 34,485.  In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements."  SSR 96-7p, 61 Fed. Reg. at 34,485.

Here, the ALJ found that the medical evidence indicated that R.M.B. suffered the symptoms alleged, but not to the level of severity alleged. (*See* Tr. at 12.)  The ALJ explained that, although Austin alleged that R.M.B. fights with friends, her teacher reported no limitations in the domain of interacting and relating with others.  (*See id.* at 12, 167.)  In addition, Austin reported that R.M.B. needs to be prompted and is easily distracted, but her teacher opined that R.M.B. suffered no limitations in the domain of attending and completing tasks.  (*See id.* at 12, 166.)  Further, the ALJ noted that R.M.B. responded well to her medications.  (*See id.* at 12, 147-54.)  According to Austin, the ALJ failed to consider her testimony that R.M.B. has severe tantrums, hurts herself, and, on one occasion, the

---

[3] The listed factors are: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms; (vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning the claimant's functional limitations and restrictions due to symptoms.  *See* 20 C.F.R. § 416.929(c)(3)(i)-(vii).

police had to be called and R.M.B. had to be taken to the emergency room. (*See* Dkt. No. 16 at 13-14.)  However, the ALJ specifically noted Austin's allegations that R.M.B. suffered "severe behavioral problems at home and at school" where she "loses her temper and is defiant and aggressive." (Tr. at 12.)  Although the ALJ did not explicitly mention Austin's allegations with respect to R.M.B.'s activities of daily living, the ALJ considered the opinion of medical expert Dr. Sharon Grand, that R.M.B. suffered only mild restrictions in her activities of daily living.  (*See id.* at 12-13, 219.)  Finally, in making his credibility determination the ALJ considered R.M.B.'s medical treatment records—in which Austin reported on R.M.B.'s progress—in addition to her school records.  (See *id.* at 12, 146-57.)  Thus, Austin's argument that the ALJ failed to consider that R.M.B.'s behavior was significantly worse at home is without merit.  (*See* Dkt. No. 16 at 14.)

Although the ALJ did not undertake a step-by-step exposition of the factors articulated in 20 C.F.R. § 416.929(c), "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record."  *Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25,

2012) (internal quotation marks and citation omitted); *see Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (explaining that the 20 C.F.R. § 416.929(c)(3) factors are included as "'examples of alternative evidence that may be useful [to the credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's finding'") (quoting *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 546 (S.D.N.Y. 2004)). Here, the ALJ explicitly acknowledged consideration of 20 C.F.R. § 416.929, (*see* Tr. at 12), and it is evident from his thorough discussion that his credibility determination was legally sound. *See Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility). Further, the ALJ's determination that Austin's allegations were not fully credible is supported by substantial evidence. (*See* Tr. at 12.)

## C. <u>Functional Equivalency</u>

Austin contends that the ALJ erred in finding that R.M.B. did not have marked limitations in five of the six functional domains. (*See* Dkt. No. 16 at

14-20.)  In particular, Austin argues that R.M.B. had marked limitations[4] in

the domains of acquiring and using information, attending and completing

tasks, interacting and relating with others, caring for oneself, and health

and physical well-being.  (*See id.*)  As the Commissioner argues, however,

the ALJ's functional equivalency analysis is supported by substantial

evidence, and it will not be disturbed.  (*See* Dkt. No. 18 at 11-17.)

    *1.    Acquiring and Using Information*

    This domain contemplates a child's ability to "acquire or learn

information, and how well [he] use[s] the information [he has] learned."  20

C.F.R. § 416.926a(g).  Children in R.M.B.'s age range "should be able to

learn to read, write, and do math, and discuss history and science," as well

as "use increasingly complex language (vocabulary and grammar) to share

information and ideas with individuals or groups, by asking questions and

expressing . . . ideas, and by understanding and responding to the

opinions of others."  *Id.* § 416.926a(g)(2)(iv).  The ALJ found that R.M.B.

had less than a marked limitation in this domain, relying on the evaluations

of her teacher and the opinion of medical expert Dr. Sharon Grand.  (*See*

---

    [4] Under the regulations, a claimant has a "marked" limitation in a given domain when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities" in that domain.  20 C.F.R. § 416.926a(e)(2)(i).

Tr. at 13-14.)

Austin argues that the ALJ erred in relying on Dr. Grand's opinion because she incorrectly reported that R.M.B.'s full scale IQ score was eighty-five and that R.M.B. was only one grade behind in reading and at grade level in writing.  (*See* Dkt. No. 16 at 14-16.)  Further, Austin argues that the reports of R.M.B.'s teachers and school psychologist as well as consultative examiner Annette Payne indicate that R.M.B. suffers a marked limitation in this domain.  (*See id.*)

In May 2008, R.M.B.'s teacher Theresa Ricci completed a questionnaire co-signed by special education teacher Terrill Gregory.  (*See* Tr. at 164-71.)  They evaluated R.M.B. in ten activities related to acquiring and using information and opined that she suffered no problem in one activity, an obvious problem in seven activities, and a serious problem in two activities.  (*See id.* at 165.)  In their collective opinion, R.M.B. suffered a serious problem in reading and comprehending written material and expressing ideas in written form.  (*See id.*)  According to Ricci and Gregory, R.M.B. was one grade behind in reading but was at grade level in math and written language.  (*See id.* at 164.)  R.M.B. was receiving special education services five days a week in reading and math, and two days a

week in writing.  (*See id.*)  In addition to this questionnaire, Committee on

Special Education chairperson Cristi Paragi completed a report stating that

R.M.B. had scored below average on IQ testing in reading, math, and

written language.  (*See id.* at 172-73.)  Further, a psychoeducational

evaluation completed by school psychologist Susan Keyser in November

2007 revealed R.M.B.'s full scale IQ score was seventy-five.  (*See id.* at

179-83.)  According to Keyser, R.M.B. was functioning intellectually within

borderline limits, however, she performed within average limits on tasks

assessing the ability to quickly and accurately process information, within

low average limits on tasks assessing the ability to hold information in short

term memory while performing some operation or manipulation with it, and

within below average limits on tasks assessing the ability to think and

reason utilizing words, and think and reason without utilizing words.  (*See

id.* at 182-83.)

In June 2008, Dr. Payne examined R.M.B. and found her speech

fluent and clear and her expressive and receptive language skills

adequate.  (*See id.* at 158-62.)  R.M.B.'s attention and concentration were

mildly impaired and her recent and remote memory skills were intact.  (*See

id.* at 160.)  Dr. Payne opined that R.M.B.'s cognitive functioning was in the

low average range and noted that her general fund of information was appropriate to experience.  (*See id.* at 161.)  Based on this exam, Dr. Payne reported that R.M.B. could follow and understand simple directions and instructions and perform simple tasks, but had difficulty learning new tasks and performing complex tasks.  (*See id.*)  According to Dr. Payne, a special education placement would benefit R.M.B. due to the greater structure.  (*See id.* at 162.)

Thus, even if Dr. Grand misstated R.M.B.'s full scale IQ score, (*see* Dkt. No. 16 at 16), considering the reports of R.M.B.'s teachers, school psychologist, and Dr. Payne, as well as the treatment notes of Dr. Johri—who evaluated R.M.B. to be of normal intelligence and noted Austin's reports that R.M.B. was performing well in school—the ALJ's determination of less than marked limitation in this domain is supported by substantial evidence.  (*See* Tr. at 151-54, 157, 160-62, 164-71.)

2.    *Attending and Completing Tasks*

This domain contemplates a child's ability to focus and maintain attention, "begin, carry through, and finish . . . activities, including the pace at which [the child] perform[s] activities and the ease with which [she] change[s] them."  20 C.F.R. § 416.926a(h).  School-age children should be

14

able to focus "attention in a variety of situations in order to follow directions, remember and organize . . . school materials, and complete classroom and homework assignments."  *Id*. § 416.926a(h)(2)(iv).  Children of R.M.B.'s age should also "be able to concentrate on details and not make careless mistakes," change "activities or routines without distract[ion,] . . . stay on task and in place when appropriate," and "complete a transition task . . . without extra reminders and accommodation."  *Id.*

The ALJ noted Austin's claims of limitation in this domain, but, relying on the opinions of R.M.B.'s teachers and Drs. Grand and Payne, found that R.M.B. had less than marked limitation.  (*See* Tr. at 14.)  Austin argues that the ALJ's determination with respect to this domain is unsupported by substantial evidence because R.M.B.'s Individual Education Program (IEP) noted that she misses up to thirty minutes a day for medical treatment, requires extra assistance for independent reading or extensive writing, and works best when seated in front of the teaching station.  (*See* Dkt. No. 16 at 16-17; Tr. at 188.)  Further, according to Austin, the opinion of Dr. Payne indicates that R.M.B. suffers at least a marked limitation in this domain. (*See* Dkt. No. 16 at 16-17.)

The ALJ's determination that R.M.B. suffered a less than marked limitation in the domain of attending and completing tasks is supported by substantial evidence and will not be disturbed.  R.M.B.'s teachers reported that they had observed no problems in this domain and that R.M.B.'s functioning appeared age-appropriate.  (*See* Tr. at 166.)  In addition, Dr. Payne found that R.M.B.'s attention and concentration were only mildly impaired.  (*See id.* at 160.)  Non-examining medical consultants R. Mohanty and K. Prowda opined that R.M.B. suffered less than marked limitation in this domain.   (*See id.* at 200-01.)  Finally, Dr. Grand opined that R.M.B. suffered mild difficulties in maintaining concentration, persistence or pace and a less than marked limitation in the domain of attending and completing tasks.  (*See id.* at 219, 222.)

### 3.    *Interacting and Relating with Others*

This domain contemplates a claimant's ability to "initiate and sustain emotional connections with others, develop and use the language of [her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others."  20 C.F.R. § 416.926a(i).  School-age children should be able to, among other things, develop more lasting friendships with children who are the same age,

begin to understand how to work in groups, talk to people of all ages, and to speak in a manner that both familiar and unfamiliar listeners readily understand.  *See id.* § 416.926a(i)(2)(iv).

Relying on the opinions of Drs. Payne and consultative examiner Tomasito Virey, Austin claims that the ALJ's decision—that R.M.B. suffered less than marked limitation in this domain—is unsupported by substantial evidence.  (*See* Dkt. No. 16 at 17-18.)  Austin further contends that the ALJ failed to consider her testimony that R.M.B's behavior at home was worse than her behavior at school.  (*See id.* at 18.)

As the ALJ noted, Dr. Grand opined that R.M.B. suffered less than marked limitations in this domain.  (*See* Tr. at 15.)  Further, although Dr. Virey noted that R.M.B. had difficulty pronouncing some words and diagnosed her as suffering a speech and language problem, he opined that R.M.B. was capable of participating "in age-appropriate educational, social, recreational, and physical activities, as long as she follows up with therapists and monitors for progress."  (*Id.* at 216; *see id.* at 214.)  R.M.B.'s teachers reported that she displayed no problems in this domain.  (*See id.* at 167.)  Moreover, treatment notes reflect that, although she still has anger outbursts, R.M.B.'s behavioral problems improved with medication

17

and she was "no longer aggressive and violent" and "follow[ed] the rules of the house." (*Id.* at 153-55; *see id.* at 147-52.)  Finally, although Dr. Payne opined that R.M.B. "has difficulties making appropriate decisions and relating with others," upon examination she noted that R.M.B.'s social skills were fair, eye contact was appropriate, speech was fluent and clear, and expressive and receptive language skills were adequate. (*Id.* at 160-61.) Accordingly, the ALJ's finding that R.M.B. suffered less than marked limitation in her ability to interact and relate with others is supported by substantial evidence.

     *4.    Caring for Self*

     This domain contemplates a claimant's ability to "maintain a healthy emotional and physical state." 20 C.F.R. § 416.926a(k). This includes how well the claimant gets her "physical and emotional wants and needs met in appropriate ways; how [she] cope[s] with stress and changes in [her] environment; and whether [she] take[s] care of [her] own health, possessions, and living area." *Id.* Noting the opinion of Dr. Grand and considering the fact that R.M.B. is a fussy eater and had punched holes in walls, the ALJ found less than marked limitations in this domain. (*See* Tr. at 16-17.) Austin again relies unpersuasively on the opinion of Dr. Payne

for the proposition that R.M.B. had marked limitations in this domain.  (Dkt. No. 16 at 18-19.)

The ALJ's determination that R.M.B. suffered less than marked limitations in this domain is supported by substantial evidence. Specifically, the report of R.M.B.'s teachers, as well as the opinion of Drs. Grand, Prowda, and Mohanty all support the ALJ's determination.  (*See id.* at 169, 202, 222.)  Austin argues that her testimony regarding R.M.B.'s aggressive and violent behavior indicates that R.M.B. had marked limitations in this domain.  (*See* Dkt. No. 16 at 18-19.)  However, as noted above, R.M.B.'s aggressive and violent behavior improved with medication. (*See* Tr. at 147-55.)  Further, Austin alleges that because R.M.B. needs reminders to take a bath and ensure that she washes and requires help doing her hair and keeping her nails clean, she suffers a marked limitation in this domain.  (*See* Dkt. No. 16 at 19.)  However, Austin also reported that R.M.B. uses zippers by herself, brushes her teeth, eats by herself using utensils, picks up and puts away her toys, hangs up her clothes, helps around the house, obeys safety rules, and gets to school on time. (*See id.* at 97.)

     *5.    Health and Physical Well-being*

19

In this domain, the ALJ considers "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies " on a child's functioning that were not previously considered in the domain evaluating the child's ability to move about and manipulate objects. 20 C.F.R. § 416.926a(*l*).  Examples of limitations in this domain include: "generalized symptoms, such as weakness, dizziness, agitation . . . , lethargy . . . , or psychomotor retardation[;] somatic complaints related to [the child's] impairments[;] limitations in [the child's] physical functioning because of [her] treatment[; and] exacerbations from one impairment or a combination of impairments that interfere with [the child's] physical functioning."  20 C.F.R. § 416.926a(*l*)(4)(i)-(iv).

Here, the ALJ relied on the opinions of Drs. Grand and Virey in determining that R.M.B. has less than marked limitations in this domain. (*See* Tr. at 17-18.)  The ALJ also noted that R.M.B's sleep difficulty and asthma were treated with medications and she has required no hospitalizations.  (*See id.*)  Again, Austin argues that the ALJ's determination is unsupported by substantial evidence.  (*See* Dkt. No. 16 at 19-20.)  Austin points to the fact that R.M.B. still has behavioral issues despite her medication, was diagnosed with insomnia, has a history of

20

bronchial asthma, and misses up to thirty minutes of school a day for medical treatment. (*See id.*) However, the ALJ's decision with respect to this domain is supported by the opinions of Drs. Grand, Mohanty, Prowda, and Virey. (*See* Tr. at 203, 216, 222.) Moreover, treatment records reveal that R.M.B.'s behavioral problems improved with medication, upon examination her lungs were clear, and spirometry tests were normal. (*See id.* at 129, 139, 140, 142, 144, 147-55, 215.) In May 2008, Austin reported that R.M.B.'s asthma was well controlled with medication, and she had not had an asthma attack for over one year. (*See id.* at 114.) Accordingly, the ALJ's finding that R.M.B. suffered less than marked limitations in the domain of health and physical well-being is supported by substantial evidence.

## C.   Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Austin's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

May 1, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court